

ORIGINAL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2022 SEP -2  AM 11: 05

DEPUTY CLERK_____

| | | |
|---|---|---|
| MAISHA SYKES, | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 3:22-CV-1096-M (BH) |
| | ) | |
| AMERICAN AIRLINES, | ) | |
| Defendant. | ) | Referred to U.S. Magistrate Judge |

### ANSWERS TO SECOND FINAL MAGISTRATE JUDGE'S QUESTIONNAIRE

**QUESTION 1**:  For each alleged protected characteristic you alleged in your answers to the final magistrate judge's questionnaire, provide the following information:

    a.    Whether the protected characteristics was alleged in your initial charge of discrimination,

    b.    If the characteristic was not alleged in your charge,

        (1)    why it was not alleged in your charge of discrimination, and

        (2)    how it is related to the characteristics that were alleged in your charge of discrimination.

**ANSWER**:

*See Attachment for Charge of Discrimination EEOC

My initial charge after termination in 11/2019 was removed from the system with no explanation per the EEOC receptionist Q. Black. Juan Munoz was the principal supervisor.

My second charge was 10/2020 with legal assistance.

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To | Agency(ies) Charge No(s) |
|---|---|
| [X] FEPA | 31A-2021-012 |
| [X] EEOC | 31A-2021-00012 |

**Fort Worth Human Relations Commission** and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| **Maisha Sykes** | **(310) 598-8438** | **1982** |

| Street Address | City, State and ZIP Code |
|---|---|
| **2808 Mckinney Avenue #638** | **Dallas, TX 75204** |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **AMERICAN AIRLINES** | **15 - 100** | **817-963-1234** |

| Street Address | City, State and ZIP Code |
|---|---|
| **4151 Amon Carter Blvd.** | **Fort Worth, TX 76155** |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **AMERICAN AIRLINES** | **100+** | **817-963-1234** |

| Street Address | City, State and ZIP Code |
|---|---|
| **P.O. Box 619616** | **DFW Airport, TX 75261-9616** |

DISCRIMINATION BASED ON (Check appropriate box(es).)

[X] RACE  [X] COLOR  [ ] SEX  [ ] RELIGION  [X] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **06-01-2014**   Latest: **01-09-2020**

[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Original Filed With TWC on 07/15/2020 and is incorporated.

## I. PERSONAL HARM

The Company has discriminated against me because of my race, color, and national origin, Black /African American and in retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Texas Commission on Human Rights Act ("TCHRA").

I have retained Jackson Spencer Law to represent me in this matter. I am African American. I began working for the Company in June 2014 as a Flight Attendant. Despite my good performance, my supervisors consistently dismissed my complaints of race, color, and national origin discrimination, which I experienced on a regular basis from certain passengers and Company management. None of my supervisors, including my supervisor as of April 2019, Flight Service Manager Terri Poole, who is Anglo-Caucasian, took any action to even investigate my complaints of discriminatory treatment. On July 29, 2019, Flight Attendant Rhonda Curtwright, who is Anglo-Caucasian, stated, "American hires anybody," "I don't know why American hires you people," and "I don't understand you people" to me while on a commuting flight. Offended and *continued on next page*

continued on next page

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

10/21/2020
Charging Party Complainant Signature

NOTARY - When necessary for State and Local Agency

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF CHARGING PARTY/ COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year) NOTARY

10/21/20

AMANDA LYNN STANSBURY
Notary Public, State of Texas
Comm. Expires 08-28-2023
Notary ID 13215016

EEOC Form 5 (11-09)

| CHARGE OF DISCRIMINATION | Charge Presented To | Agency(ies) Charge No(s) |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA <br> [X] EEOC | 31A-2021-012 <br> 31A-2021-00012 |
| **Fort Worth Human Relations Commission** | | and EEOC |
| *State or local Agency, if any* | | |

THE PARTICULARS ARE

**I. PERSONAL HARM:** *(continued)*

upset by Curtwright's comment, I reported the comment to Poole as well as my Union Representative Lisa Bales, Anglo-Caucasian the same day via email. The next day, Poole emailed me, "I apologize that you were treated so rudely," and then stated that behavior was not "the way we would like" me to be treated. However, no investigation ensued from my complaint. In mid-August to early September 2019, I met with Flight Service Manager Victor Rendon, who is Anglo-Caucasian, Bales, and Poole to discuss the events of July 29. Rendon dismissed my concerns and did not acknowledge my complaint to Poole and Bales, made the same day of the incident. Additionally, Bales showed me a printed email from Flight Attendant Steve Flores, who is Anglo-Caucasian, to Rendon, describing me as "dangerous" and "angry."

Rendon then revoked my badge and stated that the Company would be completing an investigation of the incident. I was distressed at Rendon's statements and actions. I asked why I had not been called in a month prior when I had reported Curtwright's discriminatory comments, why Flores had not been reprimanded for his discriminatory comments in his letter, and if the alleged investigation was retaliatory in nature. Rendon refused to answer my questions. In early November 2019, Rendon scheduled a meeting with me, whereupon I reached out to Poole, who told me that Rendon had not asked for any input from her before the meeting. On November 11, 2019, Rendon called me into a meeting with APFA President Margaret Barnes, who is Anglo-Caucasian. Rendon stated the Company was terminating me for just cause and told me that I "did not deserve" my job. When I asked why my current supervisor, Poole, was not asked for any input or even interviewed, Rendon responded that Poole had been "newly hired." I also asked why my complaint of discriminatory treatment by Curtwright had not been investigated, but Rendon was unable to provide a response. Barnes then asked Rendon to rewrite my termination letter, which she called "one-sided." I asked Rendon why he had sided with Flores' letter. Barnes then asked Rendon to step out of the meeting and told me that Rendon thought my report was "fabricated."

On January 9, 2020, I attended a grievance meeting with Barnes, Director of Flight Service Tim McMahan, and Andy Patterson, all of whom are Anglo-Caucasian. When Barnes presented the evidence of Curtwright's discriminatory statements to me and argued that Curtwright's statements were completely unwarranted and discriminatory, Patterson began to speak on my behalf. Immediately after Patterson began to speak, McMahan waved his hand, silencing Patterson, then stated that he did not see any problem with Curtwright having referred to me as "you people." My grievance was then rejected because Barnes believed that my complaint would not be upheld at a disciplinary hearing or arbitration, due to my past repeated complaints.

*continued on next page*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY SIGNATURE – *When necessary for State and Local Agency* |
|---|---|
| I declare under penalty of perjury that the above is true and correct | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. <br> SIGNATURE OF CHARGING PARTY/ COMPLAINANT |
| 10/21/2020    *Charging Party Complainant Signature* <br> Date | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE AMANDA LYNN STANSBURY <br> *(month, day, year)* NOTARY SEAL   Notary Public, State of Texas <br> 10/21/202   Comm Expires 08-28-2023 <br> Notary ID 132750161 |

EEOC Form 5 (1 USE)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form | [X] FEPA<br>[X] EEOC | 31A-2021-012<br>31A-2021-00012 |

| Fort Worth Human Relations Commission | and EEOC |
|---|---|
| State or local Agency, if any | |

## II. RESPONDENT'S REASON FOR ADVERSE ACTION
I "did not deserve" my job.

## III. DISCRIMINATION STATEMENT
I believe I have been discriminated against because of my, race, color, and national origin, Black /African American  in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Texas Commission on Human Rights Act.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

10/21/2020 *Charging Party Complainant Signature*

NOTARY SIGNATURE- When necessary for State and Local Agency

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF CHARGING PARTY/ COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year) NOTARY SEAL

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as should identify the charging and responding parties and the actions or given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

**NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW**

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

**NOTICE OF NON-RETALIATION REQUIREMENTS**

Please notify EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

**QUESTION 2**: Provide the following information for your former employer:

    a.    A full street address where it may be served with process.[2] *HEAD QUARTERS*
*1 Skyview Drive, Fort Worth, TX 76155*

    b.    The particular department or division (**including the street address and city in which it was located**) in which you were employed,
*Inflight Division - DFW Airport*

    c.    The particular department or division ((**including the street address and city in which it was located**) in which the alleged discrimination occurred,
*Inflight Division*

    d.    Your position in that department or division,
*FLIGHT Attendant*

    e.    The dates of your employment in that department or division,
*4/2014 to 11/11/2019*

    f.    The identity and position of your supervisor in that department or division,
*Dorothea Wilson, Sorah Paulette, Terri Poole, Victor Pendan*

    g.    The identity and position of the allegedly discriminating official, and
*Inflight Management, APFA, Professional Standards*

    h.    Whether you reported the alleged discrimination to your supervisor or Human Resources department. If you reported the discrimination, specify the date (month, day, and year) that you reported it, and the identity of the person to whom you reported it. *SEE Exhibits 1 through 4*

**ANSWER**:
*2400 Aviation Dr. DFW Airport, TX 75261*
*1 Skyview Drive, Fort Worth, TX 76155*

---

[2] If a defendant cannot be timely served with process due to a lack of a valid address or improper identification, your claims against that defendant may be dismissed without prejudice under Fed. R. Civ. P. 4(m). "Without prejudice" means that the dismissal will not prevent the plaintiff from filing a new action against the defendant on the same factual allegations.

**QUESTION 3**: Describe each adverse employment action taken against you that supports your claim of employment discrimination. For each alleged adverse employment action, provide the following information:

a. The date (month, day, and year) and location (street address, city and state) where the action took place,

b. The identity of the person(s) who took the action against you,

c. The protected characteristic(s) (such as race, color, religion, sex, national origin, age or disability) that you are claiming was the reason for that particular adverse employment action,

d. A description of how you were treated less favorably than other similarly situated employees who were not in your protected group(s),

e. The identity of the alleged other similarly situated employees who were not in your protected group(s), and

f. An explanation of why you believe that the adverse employment action was taken because of your protected characteristic(s).

**ANSWER**:

SEE Exhibits 1 through 4
SEE Attachment.
Proof of discrimination by APFA Vice President
Margaret Barnes. (SEE Email)
Presented after retaliatory letter from
Steve Flores.

 **Gmail**                                      **Maisha Sykes <mbsstyles@gmail.com>**

---

### Where we are now

**Margaret Barnes** <rr1@apfa.org>                          Wed, Jan 29, 2020 at 12:19 PM
To: Maisha Styles <mbsstyles@gmail.com>

Good Morning,

Just wanted to note a few items prior to connecting via phone.

Your case has been denied at the first level hearing. The company has upheld your termination.

When your case makes it on the docket I will present your case to the Grievance Review Committee. (this committee is made up of the other Regional Representatives and the Vice President)

If you case makes it on the docket the date I will present your case will be 2/13/2020. If it does not I will present on 3/18/2020.

Your text states that you would like to see the Company policy that states it is mandatory for you to take Anger Management. There is no company policy. As we discussed your performance history is going to be hard for me to overcome. My collegues will look at this and could potentially decide there is no way an arbitrator would side with us. If you were to provide a document that states that you are enrolled or have taken a class this would assist me in presenting your case to the GRC. (Grievance Review Committee).


Margaret Barnes
rr1@apfa.org
214.500.3268

 **Gmail**                                              **Maisha Sykes <mbsstyles@gmail.com>**

## Where we are now

**Margaret Barnes** <rr1@apfa.org>                                    Thu, Jan 30, 2020 at 8:26 AM
To: Maisha Styles <mbsstyles@gmail.com>

Hi,

Let's talk today. I will be availabe from noon-five. Please give me a call.

Have you filed your EEOC claim?
If not I reccomend you do so immediately.


Regards,
Margaret

---

**From:** Maisha Styles <mbsstyles@gmail.com>
**Sent:** Wednesday, January 29, 2020 5:26 PM
**To:** Margaret Barnes <rr1@apfa.org>
**Subject:** Re: Where we are now

I will not be able to attend any classes that are not mandatory and are out of pocket expenses. I do not have insurance anymore. I was racially profiled on every level even in our hearing where Andy and Tim stated that he didn't see anything wrong with people calling Blacks "you people"! Then he didn't allow his colleague to voice his opinion! Wow! There's no room for white privilege after I've sacrificed and put my life on the line. I was denied unemployment after the lies Victor Rendon told. There's a huge issue thats being ignored. Discrimination.

I was asked to be mild mannered and to dumb myself down during this meeting. I only answered the questions not giving my honest truth. Unacceptable in a biased case.

He did NOT look at my case. Where is the EEOC?
This is a discrimination case and I must get justice immediately. American Airlines has been under fire for racial profiling for years against passengers and employees. Even NAACP issued a national statement.

I ask that this be brought to your board members on the next docket that the Director of Flight Service does not see anything wrong with calling Blacks "YOU PEOPLE". Even you intervened saying that you would not want to be addressed in that manner because it's rude. I thank you for your time and I look forward to speaking with you.

Thank you.


Sent from my iPhone


     On Jan 29, 2020, at 12:19 PM, Margaret Barnes <rr1@apfa.org> wrote:


     [Quoted text hidden]

 **Gmail**                                         **Maisha Sykes <mbsstyles@gmail.com>**

---

## Fw: Letter

**Margaret Barnes** <rr1@apfa.org>                                    Mon, Jan 27, 2020 at 8:59 AM
To: Maisha Styles <mbsstyles@gmail.com>

Hi,

Victor's letter, which I believe you are referring, is your final warning letter. It is in company documents
Exhibit 3.

I will be available today at 1300.

Thanks,
Margaret

---

**From:** Maisha Styles <mbsstyles@gmail.com>
**Sent:** Sunday, January 26, 2020 6:15 PM
**To:** Margaret Barnes <rr1@apfa.org>
**Subject:** Letter

Here is a letter where Tim states that after "careful consideration of the relevant facts and evidentiary
documents presented I was denied."

I'm certain that my case was not "carefully" considered. Just as the one-sided letter that Victor Rendon
wrote was not. Are you able to send his letter as well.  I'd like to speak more with you about this tomorrow
please. What time are you available?

Tim McMahan
Director
Flight Service – Western Region

**American Airlines**

January 21, 2020

Maisha Sykes
708 Lake Carolyn Pkwy 309W
Irving, TX 75039

Dear Maisha,

Thank you for meeting with me on January 9, 2020 to review your grievance. After careful consideration of the relevant facts and evidentiary documents presented by you and your APFA representative, Margaret Barnes, I have concluded that the termination of your employment with American Airlines was for just cause.

In view of the above finding, your grievance is denied in full. I recognize this is not the outcome you were seeking and wish you the best in your future endeavors.

Sincerely,

Tim M. Mc

Tim McMahan
Director
Flight Service - Western Region

Cc:     Andy Patterson
        Mark Moscicki
        Margaret Barnes
        Laura Ann Lasola

Sent from my iPhone

**QUESTION 4**: You appear to be alleging that your employer retaliated against you for prior protected activity. Describe each adverse employment action taken against you that supports your claim of retaliation. For **each** alleged adverse employment action, provide the following information:

    a.    The date (month, day, and year) and location (street address, city and state) where the action took place,

    b.    The identity of the person(s) who took the action against you,

    c.    All of your protected activity for which the defendant allegedly retaliated against you. Specify the date (month, day, and year) and location where you engaged in that protected activity.

    d.    An explanation of why you believe that your prior protected activity is causally connected to the alleged adverse employment action.

**ANSWER**: National Vice President Margaret Barnes Statement. SEE Attachment.
APFA Union
Steve Flores Letter Attached

# Understanding our differences: New training course helps address everyday bias

American Airlines is committed to providing an inclusive, welcoming environment for all team members and customers. We are 130,000 team members serving more than 500,000 customers every day. Our team members strive to create an environment where all people feel welcomed and valued, regardless of race, religion, age, national origin, sexual orientation or gender identity. It is absolutely essential that we are all pulling in the same direction when it comes to serving our customers. One way to ensure we deliver on this commitment is to care for each other, to better understand our differences and to always celebrate the things that bring us together.

Over the next 18 months, all American team members will engage in a new learning opportunity — Disrupting Everyday Bias. This new training builds on our current web-based course, Exploring Unconscious Bias, which is a prerequisite to this course. This new, engaging 90-minute instructor-led class provides real-life work examples of understanding and addressing bias in our work environment.

The objectives for Disrupting Everyday Bias are as follows:

• Increase awareness of the concept of unconscious/implicit bias

• Recognize the impact of our personal bias on others (customers and team members)

• Understand that bias is natural but needs to be managed for us to truly

make culture a competitive advantage

Registration for this course has started rolling out for domestic mainline and regional team members and will continue through 2020 for our international team members. It is important to note that this course for flight attendants will begin as part and concurrent with the April Continuing Qualification (CQ) cycle. Likewise, courses for pilots will begin in October during their CQ cycle. Courses for all international team members are planned to begin late fourth quarter 2019.

For all other frontline team members, training will begin in April. Local training coordinators will register you based on operational schedule and team member availability. You will be informed of your scheduled training time in advance.

This course is an investment in our team members and our culture. We will continue to build an inclusive work environment at American. To learn more about when *Disrupting Everyday Bias* will be available to your workgroup/ location check out the course schedule.

## Rendon, Victor

| | |
|---|---|
| **From:** | Steve Flores <swann2080@yahoo.com> |
| **Sent:** | Thursday, August 1, 2019 6:23 PM |
| **To:** | Rendon, Victor |
| **Subject:** | Flight 1331 LAX-DFW Monday July 29TH, Non-Rev Flight Attendant Sykes |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Dear Mr Rendon,

Per our conversation, on Wednesday July 31, regarding the behavior of Non-Rev Flight Attendant Sykes on Flight 1331, on Monday July 29th. Here is the incident as best as I remember.

I was F/A #2 on flight 1331 from LAX to DFW. It was an oversold flight and F/A Sykes was seated across from my jumpseat in the aft of the aircraft. After take off, I had asked Sykes to please take either the #3 or #4 jumpseat for the duration of the flight. She said it was fine. #3 Flight Attendant Keech and Flight Attendant Estrada came to the back of the aircraft as I prepared the carts for our service. Sykes stayed in the jumpseat. At one point, Flight Attendant Keech was standing next to her jumpseat, for there is not much room to maneuver, while setting up the carts and passengers going to the bathroom. Sykes turned to him, looked at him and told him to back off. Andrew was stunned, stepped away, and moved over towards my jumpseat. Again, I asked Sykes to take an other jumpseat. Sykes then got up, and took her suitcase into the aircraft aft left lav and stayed in there for the better part of 20 minutes while I set up the carts for service. We began our service. After I served the EP passengers, I realized I forgot the napkins I hand out as I offer pretzels or cookies to our passengers. When I returned to the galley, Sykes was once again sitting in the Aircraft aft right side jumpseat. I asked her, once again to please take either the #3 or #4 jumpseat. She then asked, "Why? your doing the service." I told her that we are the active crew and she was a Non-Rev, and if we are back in the galley when turbulence occurs in flight, there will be two jumpseats for 3 bodies. She became visibly upset, got up, and took the #4 jumpseat. As our service proceeded to row 24, I offered the passengers in row 24 pretzels or cookie, and asked if they would like to purchase a food item. They said no. I looked over at Sykes and her eyes were fixed on me in an angry manner. I stared right back at her until she looked down,

The rest of the flight went well. Sykes remained in the #4 jumpseat for the duration of the service. Upon final approach, after the Captain had announced "Flight Attendants Prepare the cabin for landing, I was stowing the galley and Flight Attendant Estrada was picking up the cabin. The landing gear came down and Flight Attendant Sykes came to back of the aircraft. In a storm she opened the overhead bins and pulled out her suitcase, tote, and items she had taken out. Flight Attendant Estrada, trying to avoid her reached around and handed me a bag of trash she had collected, and proceeded to her jumpseat. Flight attendant Sykes continued to pack her items. We were close to landing; we were at possibly 1,500 feet when Sykes proceed down the isle to the front of the plane. I was shocked wondering where she was going to put her bags in such a short period of time. I took my seat and moments later the aircraft landed.

After all the passengers had deplaned, we 4 flight attendants began talking about our collective experiences with Sykes. Flight Attendant #1 Rhonda Curtright stated that she was shocked to see Sykes coming down the isle so close to landing. She said that Sykes told her that she she smelled smoke in the cabin. She had tried to call her to tell her of the smoke. Mr Rendon, I was in the aft of the aircraft and she did not pick up the phone, nor did she tell me she smelled smoke, nor did she use the P.A. system to call the #1 at any time. We all would have heard the chimes. She then told Fight Attendant Curtwight to find her space to put her bags up. Flight Attendant Curtright told us that she told Sykes to go back to her jumpseat. Sykes refused to go back.

I thank God above that Flight Attendant Curtright was able to quickly process and discern the situation and not call the Captain to pass on Sykes false claim of smelling smoke in the aft of the aircraft. This could have quickly spiraled out of control had a passenger overheard Sykes comments and acted on them, or if Flight Attendant Curtright passed on the false claim right before landing to the Captain. I hope Flight Attendant Curtright is acknowledged and commended for her quick thinking that kept us all safe.

Had this been an isolated incident, I would not be writing to you. About 19 months earlier I was flying a three day trip with Flight Attendant Sykes. This incident was also documented by DFW Flight Service. We laid over in CLE on New Years

1

Eve Although my recollections may have faded just a bit, the event is seared into my mind. Our pick up from the hotel lobby was approximately 0600 for and approximately 0720 departure. All except Flight Attendant Sykes were in the lobby on time. we waited a few minutes for her, to no avail. After the third call to her hotel room, Flight Attendant Sykes picked up her phone and told the Captain she just woke up and that she will be down in a few minutes. The Captain told her to catch the next van. Flight Attendant Sykes showed up at the aircraft at approximately 0730. The Captain asked her if she was OK, and if she can handle the service and her door in case of an emergency. she said she could. It was my understanding that the Captain called DFW flight Service to have someone meet the flight.  A few minutes later we began to board the S-80 aircraft. Once boarded, and after the demo, Flight Attendant Sykes took her jumpseat. After takeoff, She got up, took her jacket and sat in the empty last row, seat 32F, cover her self and slept for the next 2 hours, leaving me to do the service by myself, until the #1 Flight Attend finished her breakfast service and joined me on the cart at row 27. As we began to descend, Flight Attendant Sykes got up, went to the bathroom, and then took her jumpseat for landing.I remember many passengers missed their connection flights, one in particular missed the only flight of the day to Seoul on South Korean Airlines. Upon arrival at DFW Flight Service Manager Danny Widner met the aircraft and, being her reserve month, told her she had been reassigned. She said she was feeling sick. He then asked her if she was refusing the assignment or calling in sick. She said she is calling in sick.

These are my only two experiences with Flight Attendant Sykes. The first encounter with her on News Years Eve of a few years ago, left me feeling that she is not trust worthy. What if we had a medical emergency, She would have been useless, as she slept through the flight. I cannot trust her to do her job, nor to have my back in any kind of disturbance or emergency on the aircraft. As for Monday's incident, I find Flight Attendant Sykes dangerous. To falsify a smoke in the cabin claim, and to walk down the isle with her bags with a minute or two before landing and telling the #1 Flight Attendant to find space for her bags, is self serving and a danger to all.

If you have any questions as to the facts of these two incidents, please feel free to contact me.

Thank you for your time.

Sincerely, Flight Attendant Steve Flores

Emp# 175597 DFW base.

*Accepted by management after Bias Course*

## Fwd: 658089 Commute (Original Complaint)

Maisha Styles <mbsstyles@gmail.com>
Mon 11/4/2019 1:30 PM
To: Margaret Barnes <rr1@apfa.org>

Below is the first email that I sent to my FSM as an initial complaint on the Flight Attendants. I've never written anyone up, so this was my intention.

Her reply is below as well.

Thank you.

Maisha Sykes

Sent from my iPhone

Begin forwarded message:

> **From:** "Poole, Terri" <Terri.Poole@aa.com>
> **Date:** July 30, 2019 at 10:44:42 AM CDT
> **To:** Maisha Styles <mbsstyles@gmail.com>
> **Subject: RE: 658089 Commute**

> Good morning!

> Looking forward to meeting you as well. Thank you for your email.

> As of now, I've not heard anything. I apologize you were treated so rudely, this is not the way we would like to treat one another.

> I have your 5 year pin that I would like to present to you when you are available. Please reach out if you need anything.

> Terri

> -----Original Message-----
> From: Maisha Styles [mailto:mbsstyles@gmail.com]
> Sent: Monday, July 29, 2019 7:04 PM
> To: Poole, Terri <Terri.Poole@aa.com>
> Subject: 658089 Commute

> Greetings Terri!

> I look forward to meeting you.

**Re: Margaret Barnes**

Maisha Styles <mbsstyles@gmail.com>
Mon 11/4/2019 1:19 PM
**To:** Margaret Barnes <rr1@apfa.org>
Here is the official statement.

**Subject: Attention: Professional Standards**

Attention: Professional Standards
Flight Service Manager
LAX Base Manager

This documentation is in regards to Flight Attendant Steve Flores and Rhonda Curtwright unprofessional performance, discriminatory insults and lack of respect towards an American Airline employee. Maisha Sykes commuting on Flight #1331. LAX to DFW.

As I boarded the aircraft, I introduced myself by name as well as by jump seat status to the working crew. Everyone spoke and introduced themselves except for Steve. I placed my 2 carry-ons in the center of the aft cabin overhead bin between 3LR & 4LR. While preparing for departure, the #4 offered me a water as Steve continued to set up the galley.

During taxi, I attempted to open up friendly dialogue with Steve as he and I were the only two FA's in the aft galley. He lacked responsiveness and only gave me a head nod.
(He did not verbally speak or answer)

Thereafter, as we leveled off, we both stood up after the chime. I left the galley immediately to get my bag from the overhead bin, while he proceeded to set up the galley for service. I stepped into the lavatory and changed out of my uniform into civilian attire. Once I was done, I placed my bag back in the overhead bin and noticed that the working crew were already on the carts in the forward aisle.

I sat back in my JS and within seconds, Steve rushed in the galley, stood over me and aggressively said "You NEED to move to another jumpseat"! I then asked if it was okay if I could remain seated until their service was complete, he then again rudely replied "No, you NEED to move, you're in my way"!
I respectfully moved to the 3L JS.

Steve approached the exit row and served the passengers directly in front of me. Although I was present and made eye contact with him, I was not offered anything. As the 3 & 4 FA's passed, they both were hospitable and offered food and drinks.

After their service, I visited the #1 Rhonda Curtright in First Class. She was very friendly and hospitable as well. She offered food. She even asked me why didn't I stay on the aft JS as she noticed me when borrowing a few things off of the cart. I explained to her Steve's rude behavior and attitude towards me. With compassion she apologized for his behavior. She also stated that some people are not conscious of the way that they speak to one another and was taken back by the whole scenario. She then welcomed me to take the fwd JS for the rest of the flight.

I accepted her offer and we both agreed that I'd be back up with my belongings toward the end of the flight. Steve walked up front to speak with Rhonda. He stayed up there until the Captain made the PA that we were 25 minutes until landing. I gathered my two bags and placed them both in the FC overhead bin as there were plenty of space.

While doing so the #1 says to me, "What the hell are you doing"? I was confused at that point because we were just in positive space communicating, her galley was secured and the landing gear was not down yet. I asked her if everything was okay because her attitude toward me shifted. After I took the fwd JS, she made a comment saying "What's wrong with (you people)"? American Airlines hire (anybody). "I don't understand (you people)!"
I turned to her and said, please remain professional and do not refer to me as "you people" my name is Maisha. At that point, I deescalated the situation, held my composure and no longer looked her way after she insulted me.

After the flight, I immediately emailed my FSM Terri Poole regarding this incident. My purpose and intentions for this email was to write the Flight Attendants up as a complaint . I even asked for proper protocol while commuting on the Airbus JS. She replied, but nothing came about. Weeks later, I received a voicemail saying that I needed to schedule a meeting with Victor Rendon about a complaint that was just made. I called Terri and asked her was this this same incident that I emailed her weeks ago. She said yes.

Reading Steve Flores statement shows that he was retaliating and had been holding a grudge against me for an issue that he's had with me from years ago. I did not recall flying with him.

He boasted in writing how he tried to intimidate me by staring at me until I looked down. He made a bias judgement, writing that my eyes were fixed in an "angry manner". Also in writing, he described me in his statement as a "useless" and "dangerous" Flight Attendant. While on the other hand, Rhonda referred to me as "You People" being that I'm African American and she's white. Because of this, my company badge has been revoked and I am now held from service as I was treated unjustly and nothing was done and no one was called in when I made a complaint.

The other two employees are still working.

I would like to bring this to the attention of American Airline, Professional Standards and their supervisors.

Maisha Sykes
658089

**QUESTION 5:** In order to decide whether the Dallas Division of the Northern District of Texas is an appropriate venue for this case, you must provide the following information:

a.  Where (**street address, city and state**) did the events upon which this lawsuit is based happen? *Inflight- DFW Airport*

b.  Where (**street address, city and state**) are the employment records relevant to the events upon which this lawsuit is based maintained and administered?

*1 Skyview Drive*
*Fort Worth, TX 76155*

c.  Where (**street address, city and state**) would you have worked but for the events upon which this lawsuit is based?

*1 Skyview Drive*
*Fort Worth, TX 76155*

d.  Where (**street address, city and state**) is your former employer's **principal office**?

*1 Skyview Drive*
*Fort Worth, TX 76155*

e.  Explain why this case should proceed in the Dallas Division of the Northern District of Texas.

*Jurisdiction*

Case 4:22-cv-00794-O-BP    Document 15    Filed 09/02/22    Page 22 of 28    PageID 211

Home        LOG IN              English ▼        Search AA.com®

**American Airlines** ✈        PLAN TRAVEL    TRAVEL INFORMATION    AADVANTAGE®    

⌂  Home  ›  About us  ›  Corporate structure

# Corporate structure

## American Airlines Group Inc.

## Headquarters

### Mailing address

P.O. Box 619616
DFW Airport, TX 75261-9616

### Location

1 Skyview Drive
Fort Worth, TX 76155

### Phone

682-278-9000

## Financial information

For current financial information and/or our latest Annual Report, please visit our Investor Relations page.

Investor relations ⊠

### Stock information

Common Stock Transfer Agent and Registrar
American Stock Transfer & Trust Company, LLC
6201 15th Avenue
Operations Center
Brooklyn, NY 11219

### Shareholder services

Toll-free telephone number (U.S. only): 800-937-5449
International: 718-921-8124

Shareholder website ⊠

Email us »

## Leadership

## Board of Directors

James F. Albaugh          Jeffrey D. Benjamin          Adriane M. Brown

**STATE OF TEXAS**

**COUNTY OF**

**VERIFICATION**

I understand that a false statement or answer to any interrogatory in this cause of action will

subject me to penalties for perjury. I declare (or certify, verify or state) under penalty of perjury that

the foregoing answers are true and correct. 28 U.S.C. § 1746.

SIGNED on this _____/_____ day of _September_ , 2022.

_(Signature of Plaintiff)_

Advisor
Global Advisory and Asset
Management Firm

Senior Advisor
Cyrus Capital Partners, L.P.

Managing Partner
Flying Fish Partners

John T. Cahill

Vice Chairman
The Kraft Heinz Company

Michael J. Embler

Former Chief Investment Officer
Franklin Mutual Advisors, LLC

Matthew J. Hart

Retired President & CEO
Hilton Hotels Corporation

Susan D. Kronick

Retired Vice-Chairman
Macy's, Inc.

Martin H. Nesbitt

Co-CEO
The Vistria Group

Denise M. O'Leary

Private Venture Capital Investor

Ray M. Robinson

Non-Executive Chairman
Citizens Trust Bank

Gregory D. Smith

Former Executive Vice President of
Enterprise Operations and Chief
Financial Officer
The Boeing Company

Doug Steenland

Former President & CEO
Northwest Airlines Corporation

W. Douglas Parker

Chairman and Former CEO
American Airlines

Robert D. Isom, Jr.

Chief Executive Officer
American Airlines Group & American
Airlines

# Senior Leadership Team

Robert Isom

Chief Executive Officer

Derek Kerr

Vice Chair, Chief Financial Officer
and
President, American Eagle

Maya Leibman

Executive Vice President and
Chief Information Officer

Steve Johnson

Executive Vice President and
Strategic Advisor

Priya Aiyar

Chief Legal Officer

Cole Brown

Chief People Officer

Ron DeFeo

Chief Communications Officer

Nate Gatten

Chief Government Affairs Officer

Vasu Raja

Chief Commercial Officer

November 13, 2019

To whom it may concern:

I am honored to write this character letter for Maisha Sykes. I have known Maisha for the past 3.5 years, in which time she has exhibited great leadership and exemplary character outside of her career. . Additionally, Maisha's motivation, enthusiasm, and interpersonal skills at home, show me that these are character traits that she also utilizes while at work.

Maisha is an extremely personable individual who makes all around her feel at ease. This lends itself in a positive way to all of her business and personal relationships. She is honest with herself and with others, believes strongly in her faith, and has the potential to impact her work-place and community in a profound way. She is a self-starter and brings to the table many insightful ideas and a fresh perspective. She is extremely well-read and well-informed, and is therefore aware of the major issues of today's society.

I am aware that Maisha has had some performance discussions that may contradict before-mentioned qualities that I have shared about her. After hearing details of the current complaint of all of the parties, I am confident in my management colleagues/union leaders that you all will make a decision that will allow Maisha and everyone to continue doing the career they love.

In conclusion, I whole-heartedly feel that Maisha's ingenuity, ability to adapt, and eagerness ensures that she is dedicated to her career, as well as personal endeavors. I am confident that if she is given the opportunity to continue in her current Flight Attendant role, she will be able to exhibit her full potential.

*"Assume the Best"*

**American Airlines**

**Kendall S. Harris**

*Manager Instructor/Recruiter*

Flight Service Training, Recuitment and Professional Development

Mobile: 713.458.0766



November 27, 2019

To Whom It May Concern,

It is with great enthusiasm that I submit this letter in support of Maisha Sykes. For the past five years, I've served as Maisha's Senior Pastor. During this time, I developed a great respect for her work ethic, values, integrity, character, and leadership ability.

In our ministry, Maisha is an active member. She regularly attends church and can be counted on to serve when called upon. Maisha is also active in her present community and serves in organizations in the Dallas Ft. Worth area. This is a testment to her time management and organizationa skills as well. As a Senior Pastor of a social justice focused ministry, I continue to be proud to learn of her active participation in our church and the community. It has been a pleasure to watch her model her life after the Biblical principles she studies in church.

I have no reservations about submitting a letter of support for Maisha Sykes. I'm confident that her dedication, integrity, intelligence, and commitment to serving others will allow her to continue to be successful and contribute to her community and professional field greatly.

In His Service,

Dr. Frederick D. Haynes, III
Senior Pastor

November 26, 2019

Margaret Barnes
Union Representative
American Professional Flight Attendant Association

      Re:    Character Letter for Maisha Sykes

      Dear Ms. Barnes:

I am pleased to write this letter on Behalf of Ms. Maisha Sykes. I became acquainted with Ms. Sykes at the Salvation Army in Irving Texas while providing information and referral services to residents in the community. She stopped by my office to inquire about the Angel Tree Program and I informed her about all the various programs, services, and volunteer opportunities we have available. Since then, we have become better acquainted. Ms. Sykes continues to stop by my office from time to time.

Since spending time with Ms. Sykes I've come to learn that she has a very warm and friendly spirit. What stands out most about Ms. Sykes is how relatable and engaging she is. She is very passionate about her job and driven by her faith. She has expressed to me the desire of learning from past mistakes and becoming a better version of herself.

I write this character letter without reservation. If you have any questions, please fill free to contact me.

Respectfully,

Katrice Rand

Katrice Rand

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| MAISHA SYKES, | ) | |
| **Plaintiff,** | ) | |
| vs. | ) | No. 3:22-CV-1096-M (BH) |
| | ) | |
| AMERICAN AIRLINES, | ) | |
| **Defendant.** | ) | Referred to U.S. Magistrate Judge[1] |

## SECOND FINAL MAGISTRATE JUDGE'S QUESTIONNAIRE

Attached is a document entitled "Answers to Magistrate Judge's Questionnaire." **You must fully answer each question in the space provided** or on an attached sheet, but you must not provide any attachments to your answers.  You must verify the answers under penalty of perjury on the signature line at the conclusion of the Questions and return them to the Court by **SEPTEMBER 1, 2022**.

Failure to timely answer the questions **will** result in a recommendation that this case be dismissed for failure to prosecute or follow court orders.

**SO ORDERED this 26th day of August, 2022.**

_IRMA CARRILLO RAMIREZ_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[1] By *Special Order No. 3-251*, this *pro se* case has been automatically referred for full case management.